UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MAXIMO DELACRUZ,

                        Plaintiff,

                                                                                 <u>DECISION AND ORDER</u>

                                                                                 03-CV-6455L

                        v.

SUPERINTENDENT FLOYD G. BENNETT, et al.,

                        Defendants.
_____

Plaintiff, Maximo Delacruz, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services, alleges that his constitutional rights were violated when several DOCS employees failed to protect plaintiff from an assault by another inmate on March 11, 2002, at Elmira Correctional Facility. Defendants have moved for summary judgment.

**BACKGROUND**

Plaintiff alleges the following facts. On December 6, 2001, he was involved in a fight with another inmate, Raymond Gaston. On January 22, 2002, plaintiff, who speaks Spanish, approached defendant Sergeant Pietro and, through an interpreter, advised Pietro that plaintiff and Gaston were in the same Narcotics Anonymous class at Elmira. Plaintiff stated that he wanted Gaston removed from the class, and that plaintiff wanted to be able to complete the class without any trouble. Pietro responded that there was nothing that he could do about plaintiff's request, and that plaintiff should write a letter to the facility superintendent.

Plaintiff then sent a letter in Spanish to defendant Superintendent Floyd Bennett, and, again with help from a bilingual inmate, a letter in English as well. The letter in English, which was dated January 28, 2002, stated, *inter alia*, that plaintiff had been in a fight with Gaston on December 6, that

plaintiff and Gaston were in the same Narcotics Anonymous program at Elmira, and that plaintiff "want[ed] to finish [the] program without any problems." Dkt. #48-6 at 6. Plaintiff stated, "I spoke to Sgt. Petrow [sic] & I explained the situation & he told me to write to you, so that inmate Gaston could be remove [sic] until I finish my 8 weeks that I have left to finish my program." Plaintiff received no response to either letter.

On March 11, 2002, plaintiff attended his Narcotics Anonymous session. At the end of the session, as the inmates were leaving the classroom, someone turned off the lights. Plaintiff alleges that while the lights were off, Gaston assaulted him and cut plaintiff with a knife on the right side of his face and neck. Plaintiff alleges that defendants Sgt. Christopher Pinker and Corrections Officers Gary Miles and Alan Twedt were on duty in the classroom at the time, but that they had left their posts or otherwise failed to prevent the assault.

**DISCUSSION**

It is well established that prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of the inmates" and to protect them from the violent acts of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). Not every injury at the hands of a fellow inmate, however, will result in liability of a prison official. Rather, to prevail on an Eighth Amendment claim, a prisoner must prove both an objective and a subjective element. *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). To establish the objective element, a prisoner must show that he was incarcerated "under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. With respect to the subjective element, the prisoner must show that the official actually knew of and deliberately disregarded an excessive risk to inmate safety. *Id.*

To be liable, then, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. However, "an official's failure to alleviate a significant risk that he should have perceived but

did not" will not serve as a basis for an Eighth Amendment claim. The subjective element must rise to the level of recklessness, not mere negligence. *Id.* at 838.

Applying these standards here, I find that defendants Pinker, Miles and Twedt are entitled to summary judgment. Even assuming that plaintiff's allegations are true, and drawing all reasonable inferences in his favor, the most that could be said is that these defendants were negligent in leaving their posts or in not paying better attention when the assault occurred. There is no evidence that they knew or even should have known of any impending assault on, or other threat of harm to plaintiff at that time. Again, negligence is not enough. *See Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991) ("Proof of mere negligence will not give rise to a constitutional violation").

As to Pietro and Bennett, however, I find that issues of fact exist that preclude the entry of summary judgment. While defendants argue that plaintiff has not demonstrated that they had the requisite state of mind, the Court would essentially have to draw inferences in *their* favor to reach that conclusion, especially on the record before me, which contains no affidavits or other evidence from defendants. Assuming that Pietro did tell plaintiff that there was nothing that Pietro could do about his concerns, as plaintiff alleges and defendants–at least for purposes of their motion–do not deny, there is no way that the Court can tell at this point whether that was in fact true, or whether Pietro could, and possibly should, have done more. *See Leybinsky v. Millich*, No. 98-CV-0387, 2004 WL 2202577, at *4 (W.D.N.Y. Sept. 29, 2004) ("The fact that [defendant officer] lacked the authority to put the plaintiff in protective custody does not absolve him of liability if he knowingly disregarded a substantial risk of harm to the plaintiff by failing to take any action") (citing *Hamilton v. Leavy*, 117 F.3d 742, 748 (3d Cir. 1997)).

Likewise, as to Bennett, although there is authority that ignoring an inmate's letter is not necessarily enough to establish an official's personal involvement in a constitutional violation, *see Shell v. Brzezniak*, 365 F.Supp.2d 362, 374 (W.D.N.Y. 2005), it is equally true that a supervisor's failure to remedy a violation of which he has actual notice can give rise to a § 1983 claim. *Id.* (citing *Ayers v. Coughlin*, 780 F.2d 205, 204 (2d Cir. 1985)). Since defendants concede for purposes of

their motion that "nothing happened" in response to plaintiff's letters to Bennett, Dkt. #44 ¶ 9, it is impossible to say as a matter of law that Bennett had no personal involvement in the alleged violation, or that he was not on notice of, but deliberately indifferent to, plaintiff's pleas for protection.

Arguably, of course, Pietro and Bennett were also guilty of no more than negligence. One could also argue, as defendants do, that they had not been made aware of a substantial risk of serious harm to plaintiff. Again, though, for the Court to make such findings on the record before me would require me to draw inferences against plaintiff, which is clearly improper on a motion for summary judgment brought by defendants. *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1536 (2d Cir.), *cert. denied*, 522 U.S. 864 (1997). I cannot say that no reasonable factfinder could conclude that Pietro's and Bennett's actions or omissions at least amounted to recklessness, nor can I say as a matter of law that plaintiff's statements to them about Gaston were insufficient to alert them to a substantial risk of serious harm to plaintiff. I therefore deny Pietro's and Bennett's motion for summary judgment.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #40) is granted in part and denied in part. Summary judgment is granted in favor of defendants Gary Miles, Christopher Pinker, and Alan Twedt, and plaintiff's claims against those defendants are dismissed. In all other respects, defendants' motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 30, 2006.